Mr. J ustiee MILLER,
dissenting.
,1 am of opinion 'that this court, has no jurisdiction of the case in which it has just ordered the writ of mandamus -¿o issue.
There are in the reports of Our decisions three applications before this for the writ of mandamus,to be issued, by this, court to restore attorneys to place's at the bar from which they had been expelled by Federal courts. The .first of these is *380 the case of Burr.* The opinion delivered by Chief Justice Marshall expresses great doubt on the part of the court as to its right to interfere, and resting 'mainly on that doubt, and partly on the fact that the exclusion from 'practice was temporary, and would soon expire, the application was refused.
In the other two cases, namely, Tillinghast v. Conkling, and Mesarte Secombe, the application was denied, and the denial placed explicitly on the ground that this court has no power to.revise the decisions of the inferior courts on' this subject by writ óf mandamus.†
In delivering the opinion of the court in the latter case, Chief Justice Taney said, that “.in the case of Tillinghast v. Conkling, which came before this court at-the January Term, 1827, a similar motion was overruled. The case is not, reported, but a brief written opinion remains in the files c>f the court, in which the court says that the motion is overruled' upon the'ground that it had not jurisdiction of the ease.” In the principal case the court said: “ It -is. not necessary to inquire whether this decision of the Territorial court (disbarring Secombe) can'be revised here in any other form of proceeding. The court are of opinion that he is not entitled to a remedy 'by mandamus. . . It cannot'be reviewed or reversed in this forkt of proceeding, however erroneous it may -be, or supposed to be. And we are not aware of any case where a mandamus was issued to an inferior tribunal, commanding it,to'reverse-or annul its decision, where the decision was in its nature judicial, and within the scope of its jurisdiction and discretion.”
- The (attempt to distinguish the case now under consideration from those just cited, on the ground that in the present case the Supreme Court of the District of Columbia was ácting'without jurisdiction, is in my judgment, equally without foundation in the fact -asserted, and in the law of the case if the fact existed.
1. That court had jurisdiction of the person of Mr. Bradley, because he was a resident of the District of Columbia, and *381 because he received notice of the -proceeding, and submitted himself to the court by depending' on the merits.
2. It had jurisdiction of the offence charged, .namely, a contempt of the court whose judgment we are reviewing. - I -, say this advisedly, because the notice which called upon him to answer charged him in distinct terms with a contempt óf the Supreme Court of the District, though much of the argument of'counsel goes upon the hypothesis that the offence fob which he was disbarred was an offence against the Criml-, nal Cóurt, and not the Supreme Court..
3. That court had undoubted authority to punish contempt by expelling the guilty party from its bar.
If the court- had jurisdiction of the party and of the offence charged, and had a fight to punish-such offence by the judgment which was rendered in this case, what- element -of jurisdiction is wanting ?
But if we concede that the Supreme Court of the District exceeded its authority in this case, I know of no act of Congress, nor any principle established by previous decisiohs'of this court, which authorizes us to interfere by writ of. man- ’ d-amus. The argument in favor of such authority is derived from the analogy supposed to exist between the present case and others in which the court has held that-the writ may be issued in aid of its appellate jurisdiction, as Ex parte Crane,* Ex parte Hoyt,† and by the-practice in the Court 'of Kipg’s Bench, in England, and in some of our State courts.'
In regard to the practice in the King’s Bench and in the State courts, I-shall attempt to show presently' that this court possesses no such general supervisory power over inferipr Federal courts as belongs to the King’s Bench, and as belongs generally to^the. appellate tribunals of. the States. The appellate power of this court is strictly limited to cases provided for by act of Congress.
The ease of Crane† was one which' this court had an undoubted right tó review. It was alleged that this right was .obstructed by -the refusal of the judge of the Circuit Court *382 to sign a bill of. exception's, and the .court héld that in such . a case he might be compelled, by the writ of mandamus, to sign a truthful and proper bill of exceptions.'.
It was not necessary to. cite this ease and. others,- in which the court refused to grant the whit of mandamus!^ to show that .under proper circumstances it may issue. In Ex parte Milwaukee Railroad Company* the court" ordered a writ of mandamus- to issue .to thes judges of the Circuit .Court, because,'in the. language of the court,-“the petitioner h^s-presented a case calling for the exercise of the supervisory power of this, court over the Circuit Court, which can only be made 'effectual by a writ of mandamus”’' And this is the ;true doctrine on which the use of the writ is founded; and the sound construction offtheT3th section of the Judiciary Act.
The case óf Hoyt,† cited by. counsel for petitioner, is in strong confirmation off this. Referring to the language of that section the'court says,_“i'The present application is not warranted by any such-principles and usages'.of-law. It is neither, more nor less than -an application for an' order to reverse thé solemn judgment of the district.judge in a matter clearly within the jurisdiction of the court, and to substitute another judgment in its stead'.” Precisely what is'usked in the present case. .
The case of Tobias Watkins‡ is very analogous to the one' before us, 'and in construing the power of this court in regard to the writ of habeas corpus, decides principle^ which-appear to me to be in direct conflict-with the views advanced by the court in the opinion just read. In that case,, Watkins-had been indicted, tried, and sentenced, to imprisonment by the Circuit Court of- the District of Columbia. An application was made to this-court-for a writ of. habeas corpus, on the ground that the indictment charged no' offence of which that court, had cognizance: But, conceding this to be true, and answering the case made by the petition, the court, by Marshall,C. J., asks: “With what propriety can this court look *383 into the indictment?' We have no power,” he says, “ to examine the proceedings on a writ of error, and it would be .strange if, under color of a writ to liberate ah individual from unlawful imprisonment, ,we could substantially reverse a. judgment, which the law has placed beyond our reach. An imprisonment under ■ a judgment cannot.be unlawful unless that judgment be an absolute' nullity;- and. it cannot be a nullity if the court has general jurisdiction of th,e subject, although it be erroneous.” “ The law trusts that court with the whole subject, and has not confided to this court any power of revising its decisions.- We cannot usurp that power by the instrumentality of the writ of habeas, corpus.” And, finally, after examining the cases in which this 'court -had previously -issued the writ, of habeas corpus, he says that they are “ no authority for inquiring into the judgments-of 'a court'of general criminal jurisdiction, and regarding them as nullities, if, in our opinion, the court has misconstrued the law,, and has pronounced an offence to be "punishable criminally,- which we may think is not.”
The ease made by Mr. Bradley is much weaker than the ease of Watkins, because, in the latter, the court was-only asked to' determine, on the face of'the indictment, whether the offence charged was cognizable by the Circuit Court. Here the charge of a contempt, of which .the court below had jurisdiction,-is clear; but,we are told that, on looking into the testimony, we shall find that the petitioner was not guilty of a contempt of that court, but of another court. Jud^e Marshall and the court over which he. presided refused to look, beyond the judgment,' even'at the indictment. Here the court, looks beyond the judgment, and beyond the notice which charges the offence, and inquires into the evidence on which the party is convicted-; and because that is, in tbe opinion of this court, insufficient, it' is held that the court which tried the case had no jurisdiction. This is to me a new and dangerous test of’jurisdiction.
But with all due respect to my brethren of the majority of the court, it seems to me that their judgment in.this case is not only.unsupp nted by the cases relied on, and in conflict *384 with-the cases of Tillinghast and Sepombe, decided by this court directly on the same point, but it is at war with the settled doctrine of .the cóurt on 'the general subject of its .¡appellate jurisdiction.
The Constitution* declared that the appellate' power of this, court is subject to such’’exceptions, and .is to be ex’ér,cised under such regulations as Congress shall make.
• Chief Justice Ellsworth, construing this clause of the Constitution, in the case of - Wiscart v. Dauchy,† said : “If Congress has provided no. rule to regulate oúr proceedings, we cannot,exercise an-appellate jurisdiction; and if the rule is provided, we cannot depart from it.” - Arid the court after-wards, by Chief Justice Marshall, said in substance, that if Congressi in establishing the Suprepie Court, had npt described itk jurisdiction, ifi general power in- reviewingi the .decisions of-other Federal courts could not be denied. But the faetthat Congress had described'its jurisdiction by affirmative language, must be understood as a regulation under the Constitution, prohibiting the exercise of other powers than those described.‡
In United States v. Nourse,§ a case of summary proceedings before the district'judge under the revenue law, which provided that an appeal might be allowed to claimant by a judge of the Su.prepe Court, it was said that, “as this speeial mode is pointed out by which an appeal may be taken, it negatives the right of an, appeal in any other manner ;” and it was further said that the United States had no-right •of appeal, because pone was given by the act which authorized the proceeding.
And finally, in the case of Barry v. Mercein,ǁ this court, by.Chief Justice Taney,'declared emphatically that, “by the Constitution of the United States the Supreme Court possesses no appellate power in any case unless conferred upon it-by act of Congress; nor-can 'it be exercised in any other *385 mode of proceeding than Ichat which the law prescribes.” This case and the case of United States v. Moore were decided ' in direct reference to the jurisdiction of this court over those of the District of Columbia; and in the latter, Judge Marsh&ll'uses this unmistakable language: “This court, there-, fore, will only review those judgments of the Circuit Court of Columbia, a power to re-examine which is expressly given by law.”
‘ Let us see, then, what regulations Congress has made in regard to our jurisdiction over the'courts of the District oí Columbia.
The Supreme Court of the District, whose judgment is attempted to be brought into review here, was established-’ by the act of March 3, 1863. The only clause looking to a. revision of the decisions of that court is section 11,.which ■ epacts “that any final judgment, order, or decree of said court may be re-examined and reversed or affirmed in the Supreme Court of the United States, upon writ of error,or appeal, in the same cases and in like manner as is now .provided by law in reference to final judgments, orders, and decrees of the Circuit Court of the United States for the District of Columbia.” The act on which our jurisdiction over this Circuit Court depended is that of February 27,1801. The 8th section of that act provides that “ any final judgment, order, or decree of said Circuit Court, wherein the, matter in dispute shall exceed-the value of one hundred dollars ” (now "one thousand), “ may be re-examined and reversed or affirmed in tjie Supreme Court of the United States by writ oferror or appeal.” ,
Here then is no provision for any other modes of review than by appeal and by -writ of error; but there is a limitation-of the use of .these modes to cases in which the matter in dispute shall exceed one thousand dollars. Where then is there any authority for a review by writ of'mandamus ? . And where is there any regulation authorizing a review of this case by any mode whatever ?
For the counsel of petitioner in this case does not claim that the matter in dispute exceeds a thousand dollars, or has *386 any moneyed value. Such a claim would be fatal to the re- ' lief he asks, because it would show that it is a proper case for a writ of error, and therefore'a mandamus will not lie.
~We have repeatedly held that the writ of mandamus cannot be made to perform the functions of a writ of error.
In the recent case of the Commissioner v. Whiteley,* the following language was used without dissent: “ The principles of the law relating to the remedy by mandamus are well settled. It lies when there is a refusal to perform a mihisterial act involving no exercise of judgment or discretion. . ... It lies when the exercise of judgment and discretion are involved, and the officer refuses to decide, provided that if he decided, the aggrieved party could, have his decision reviewed by another tribunal. ... It is applicable only in these two classes of cases. It cannot be made to perform the functions of a writ of error.”
And to the same purpose are Ex parte Hoyt† and Ex parte Taylor.‡
Mr. Justiee SWA.YNE, not having heard the argument, took no part in the judgment.

 9 Wheaton, 529.

 19 Howard, 9.

 5 Peters, 193.

 13 Id. 291.

 13 Peters, 291.

 3 Ib. 193.

 Art. III, § 2.

 3 Dallas, 321.

 United States v. More, 3 Cranch, 159; Durousseau v. United States, 6 Id. 397.

 6 Peters, 470.

 5 Howard, 103.

 4 Wallace, 524.

 13 Peters, 279.

 14 Howard, 3.